IN THE UNITED STATES DISTRICT COURT FOR THE
                           NORTHERN DISTRICT OF ILLINOIS

| David Gevas (B-41175), | ) |
| --- | --- |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 18 C 4984 |
| v. | ) |
| | ) Hon. Sunil R. Harjani |
| Terrell D. Pork, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

    Plaintiff's motions for sanctions [269] and for reconsideration [307] are denied. Plaintiff's motions to quash Defendants' subpoenas [299], [302] are denied, however the Court modifies the subpoenas to request information dating to January 1, 2016, rather than January 1, 2015.

## STATEMENT

    Presently before the Court are Plaintiff's motion for sanctions (Dkt. 269), two motions to quash Defendants' subpoenas, (Dkts. 299, 302) and motion for reconsideration of the denial of Plaintiff's motion to compel discovery (Dkt. 307.) For the reasons stated below, Plaintiff's motions are denied.

*Motion for Sanctions*

    Plaintiff has submitted a motion requesting the Court to sanction Defendants regarding the production of visitation memoranda because Plaintiff claims Defendants intentionally tampered with the dates recorded on the memoranda. (*See* Dkt. 269.) Each memorandum, although initially issued in 2016 or 2017, is dated September 6, 2019. (*Id.*, pgs. 4-21.) Defense counsel has responded and explained that, when he opened the memoranda files on September 6, 2019, to produce them to Plaintiff, the computer program automatically updated the dates. (Dkt. 298, pg. 1.) Defense counsel states he produced the properly dated memoranda once the error was brought to his attention. (*Id.*, pg. 2.)

    Plaintiff seeks sanctions for the incorrect dates under Fed. R. Civ. P. 11 and 37. Rule 11 does not apply to discovery documents, Fed. R. Civ. P. 11(d), and no section of Rule 37 appears to apply to the present circumstances. It appears Fed. R. Civ. P. 26(g) more appropriately governs Plaintiff's request. Sanctions under Rule 26(g) are not appropriate. Although the originally produced records may have contained an incorrect date, the error was unintentional, and Defendants produced corrected copies of the records as soon as they were made aware of the problem. Neither has Plaintiff been prejudiced by the error as no trial date has yet been set and he has now received a copy of the memoranda with correct dates. Plaintiff's motion is denied.

*Motions to Quash Subpoenas*

Plaintiff has filed two motions to quash third-party subpoenas issued by Defendants to two of Plaintiff's medical providers. (Dkts. 299, 302.) The Court denies Plaintiff's motions to quash, but will modify the subpoenas to authorize the medical providers to disclose the requested information from January 1, 2016, rather than January 1, 2015.

Background

Plaintiff alleges in this lawsuit that Defendants retaliated against him in various ways for filing grievances and denied him the use of a wheelchair. (*See* Dkt. 146.) Plaintiff states that, among other claims, he was removed too early from Stateville's Health Care Unit, where he was recovering from cancer treatment; that he required, but was denied, a wheelchair due to the effects of his chemotherapy; and that Plaintiff fell multiple times because he was not allowed a wheelchair and refractured his clavicle. (Dkt. 146.)

In May 2019, Defendants requested Plaintiff's medical records as part of their discovery requests. (Dkt. 259, pg. 259.) Plaintiff, however, refused to voluntarily turn over the information. (*Id.*) At the November 20, 2019 status hearing, Defendants informed the Court of their difficulty obtaining Plaintiff's medical records because of Plaintiff's failure to complete release of information forms. The Court ordered Plaintiff to return completed release forms to Defendants allowing them to obtain his medical records relating to his cancer and bone fracture treatment at UIC and KSB from January 1, 2015 to the present. (Dkt. 221.)

On December 23, 2019, Defendants filed a motion for a qualified protective order pursuant to HIPAA, in which they informed the Court that, although Plaintiff had completed the medical release forms, he had crossed out portions of the form in such a way that UIC Hospital refused to accept it. (Dkt. 259, pg. 2.) The Court granted Defendants' request for a protective order to allow Plaintiff's medical providers to comply with Defendants' subpoenas and entered the HIPAA protective order on January 1, 2020. (Dkt. 286.) The HIPAA order authorizes the parties "to receive, subpoena, and transmit 'protected health information' pertaining to Plaintiff." (*Id.*)

On January 3, 2020, Defendants issued subpoenas to the University of Illinois Health Information Management Department and Rush University Medical Center's Health Information Management Office. (Dkt. 299, pg. 4; Dkt. 302, pg. 5.) Each subpoena requested "Mr. Gevas' medical records from January 1, 2015, to present" and the identities of "all individuals who treated Mr. Gevas since 2015." (Dkt. 299, pg. 7-8; Dkt. 302, pg. 8-9.) In response, Plaintiff filed two motions to quash the subpoenas, arguing that the subpoenas seek information not relevant to this lawsuit and would constitute an invasion of his privacy. (Dkts. 299, 302.)

Analysis

"The scope of material that may be sought through a subpoena is as broad as the scope of discovery generally allowed in civil proceeding." *Doe v. MacLeod*, 2019 WL 2130141, at *3 (C.D. Ill. May 15, 2019). Therefore, a subpoena may seek records pertaining to any nonprivileged matter that is relevant to any parties' claims or defenses and that is proportional to the needs of the case.

Fed. R. Civ. P. 26(b)(1). Where it appears a subpoena goes beyond the scope of discovery, Federal Rule of Civil Procedure 4(d)(3)(A)(iii) provides that a court, on a timely motion, "must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies." The party opposing the discovery bears the burden of proving the requested discovery should not be allowed.

First, while Plaintiff correctly notes that fact discovery concluded on November 30, 2019, given that Plaintiff's refusal to disclose the records in question and his failure to properly complete the medical release forms as ordered to do at the November 20, 2019 status date are the sole causes of Defendants' delay in requesting the medical records, the Court sees no reason to quash the subpoenas on the basis that the discovery deadline has now passed.

Second, given the claims Plaintiff asserts in his fourth amended complaint, Plaintiff's medical condition and treatment at the time of, and for a period of time prior to, the alleged events is plainly relevant to the parties' claims and defenses. Although Plaintiff argues records other than his oncology and orthopedic records are irrelevant to this lawsuit, it is not unlikely records relevant to this case appear elsewhere in his medical records. For instance, emergency room records, physical therapy notes, notes regarding the issuance of medical equipment, or pharmacy records may all contain information relevant to the case at hand. To the extent Plaintiff is concerned about the improper disclosure of his records, the parties have a HIPAA-qualified protective order in place to protect the documents. (*See* Dkt. 286.)

Plaintiff also argues that defense counsel is somehow bound to requesting only Plaintiff's UIC and KSB records relating to his right clavicle fracture by an agreement reached before this Court during the November 20, 2019 status hearing. (Dkt. 299, pg. 2; Dkt. 302, pg. 2.) However, no such agreement was reached at the November 20, 2019 status date. On that day, the Court ordered Plaintiff to complete release of information forms for his UIC and KSB medical records so that Defendants could obtain records from January 1, 2015 to the present relating to his cancer and bone fracture treatment. (Dkt. 221.) The Court did not limit Defendants' ability to obtain other records relevant to this case.

Consequently, Plaintiff has not carried his burden of showing that the subpoenas should be quashed. Nonetheless, given that all the events in Plaintiff's fourth amended complaint occurred in 2017, it would appear that the disclosure of medical records dating back to January 2015 would not be proportional to the needs of this case. Records dating to approximately one year prior to the events stated in Plaintiff's complaint appear just as likely to provide Defendants with a complete picture of Plaintiff's medical condition leading up to those events. The Court, therefore, modifies Defendants subpoenas to allow the release of information dating to January 1, 2016.

*Motion to Reconsider*

Plaintiff's motion to reconsider requests that the Court reconsider its January 10, 2020 decision not to compel Defendants to produce additional records regarding Plaintiff's June 29, 2017 visit. (Dkt. 307.) The Court denied Plaintiff's request to compel as moot because Defendants had previously produced visitation memoranda for that date. (Dkt. 297, pg. 3.) Plaintiff now argues that the visitation memoranda are inadequate for his discovery needs and that only the movement

3

logs will do to show whether Plaintiff was denied the use of the wheelchair accessible visiting room. (Dkt. 307, pgs. 1-2.) Plaintiff states he requires the logs to back up his own testimony. (*Id.*)

A motion to reconsider an interlocutory order "serve[s] a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996) (citation omitted). As this Court has stated on multiple occasions, a motion for reconsideration "does not provide a vehicle for a party to undo its own procedural failures, and it certainly does not allow a party to introduce new evidence or advance arguments that could and should have been presented to the district court prior to the judgment." *Bordelon v. Chi. Sch. Reform Bd. of Trs.*, 233 F.3d 524, 529 (7th Cir. 2000) (citation omitted).

Defendants produced the visitation memoranda in response to Plaintiff's discovery request in September 2019. Fact discovery in this case closed on November 30, 2019. (Dkt. 221.) All of the arguments and facts Plaintiff presents in the present motion to reconsider were available to him on December 9, 2019, when he filed his motion to compel, yet Plaintiff did not present them at that time. (Dkt. 234, pg. 2.) The extent of Plaintiff's explanation in his motion to compel for why he was entitled to production of the requested records was that they "will evidence Plaintiff was not provided a wheelchair by Defendants on 6/29/17." (*Id.*) Plaintiff possessed the records Defendants asserted were responsive to his request to produce at the time he filed his motion to compel and could have informed the Court as to why he believed the records were inadequate at that time. Plaintiff failed to do so and cannot now rely on a motion to reconsider to present arguments he should have made in his underlying motion.

The Court notes that Plaintiff frequently files motions to reconsider in this and his other lawsuits in order to clarify arguments he failed to make in his underlying motions. Plaintiff should be aware by this point that such a practice will be unavailing. *See Quaker Alloy Casting Co. v. Gulfco Industries, Inc.*, 123 F.R.D. 282, 288 (N.D. Ill. 1988) ("Motions [to reconsider] such as this reflect a fundamental misunderstanding of the limited appropriateness of motions for reconsideration."). "[J]udicial opinions 'are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure,'" and thus "motions to reconsider are not appropriate vehicles to advance arguments already rejected by the Court or new legal theories not argued before the ruling." *Schilke v. Wachovia Mortg., FSB*, 758 F.Supp.2d 549, 554 (N.D. Ill. 2010) (quoting *Quaker Alloy Casting Co. v. Gulfco Indus., Inc.*, 123 F.R.D. 282, 288 (N.D.Ill 1988) and *Zurich Capital Mkts., Inc. v. Coglianese*, 383 F.Supp.2d 1041, 1045 (N.D.Ill. 2005.)). Plaintiff cannot rely on multiple bites at the apple in order to make his case. Rather, Plaintiff must present his best case in any initial motion based on all facts and arguments available to him at the time. The Court will not grant motions to reconsider that present arguments or facts that Plaintiff could, and should, have asserted in his original motion.

**SO ORDERED.**

Dated: February 7, 2020

Sunil R. Harjani
United States Magistrate Judge