IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAVID GEVAS, | |
| Plaintiff, | |
| v. | Case No. 18-CV-04984 |
| TERRELL PORK, *et al.*, | Judge Mary M. Rowland |
| Defendants. | |

## MEMORANDUM ORDER AND OPINION

Plaintiff David Gevas sued defendants Terrell Pork, William Brown, and Ronald Gomez, all Illinois Department of Corrections (IDOC) employees, for lack of access to medical care and supplies he suffered in state custody. In May 2023, a jury found Defendants Pork and Brown were deliberately indifferent to a substantial risk of harm to Gevas in violation of the Eighth Amendment to the U.S. Constitution. [727]. The jury awarded no compensatory damages, one dollar each in nominal damages against Pork and Brown, and $35,000.00 in punitive damages against Pork and $25,000.00 in punitive damages against Brown. *Id*. The jury found Gomez not liable. *Id*.

Pork and Brown filed timely motions for remittitur and/or a new trial under Federal Rule of Civil Procedure 59. [736]. For the following reasons, the Court denies Defendants' motions for post-trial relief.

**I. Background**

1

Gevas is an inmate in the custody of IDOC and was incarcerated at Stateville from 2010 to 2019. In June 2017, he was relocated from C-House to X-House in a wheelchair. [732 Trial Tr. 5/23/23] at 313. Defendants Pork, Brown, and Gomez worked in Stateville's X House: Pork as a sergeant, Brown as a lieutenant, and Gomez as a correctional officer. *Id.* at 202, 262, 272.

In June 2018, Gevas sued the three IDOC correctional officers — Pork, Brown, and Gomez — and Wexford Health Sources medical staff under § 1983 and the First Amendment for retaliation and the Eighth Amendment for deliberate indifference. [14]. After the Wexford Defendants and First Amendment claims were dismissed at summary judgment, [614], Gevas proceeded to trial in May 2023 on his Eighth Amendment claims against the IDOC Defendants.

The jury held Pork and Brown liable for deliberate indifference for denying Gevas access to a wheelchair for two months pursuant to a medical permit and refusing for 17 months to give him a new mattress to comply with a permit allowing him to have two mattresses to recover from surgery. [727]. The jury awarded Gevas no compensatory damages, nominal damages of $1 against each defendant, and punitive damages of $35,000 against Pork and $25,000 against Brown. *Id*. Gomez was not found liable. *Id.*

## II.  Defendants' Motion for Remittitur of Punitive Damages

Defendants contend that the $60,000 award violates principles of proportionality under the Due Process Clause. For the reasons below, the Court declines to remit the jury's award.

2

### A. Standard

A jury can award punitive damages to a plaintiff "to further a State's legitimate interests in punishing unlawful conduct and deterring its repetition." *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 568, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996). A punitive damages award violates the Due Process Clause "[o]nly when an award can fairly be categorized as grossly excessive in relation to these interests [and thus] enter[s] the zone of arbitrariness that violates the Due Process Clause of the Fourteenth Amendment." *Id.* (cleaned up); *see also Holmes v. Elgin, Joliet & Eastern Ry. Co.*, 18 F.3d 1393, 1395-96 (7th Cir.1994).

In *Gore*, the Supreme Court set three guideposts for judicial review of a punitive damages award: (1) the reprehensibility of the defendant's conduct; (2) the disparity between the award and the harm or potential harm suffered by the plaintiff; and (3) the difference between the award and civil penalties authorized in comparable cases. 517 U.S. at 575. At bottom, the "primary responsibility for deciding the appropriate amount[ ] of [punitive] damages rests with the jury," *EEOC v. AIC Security Investigations, Ltd.*, 55 F.3d 1276, 1287 (7th Cir. 1995).

### B. Reprehensibility

The reprehensibility of Defendants' actions is the most important indicator of whether a punitive damages award is reasonable. *Gore*, 517 U.S. at 568. Reprehensibility breaks down into five factors: 1) the injury caused was physical as opposed to economic; 2) the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; 3) the target of the conduct had financial

3

vulnerability; 4) the conduct involved repeated misconduct; and 5) the harm was the result of intentional malice, trickery, or deceit, or mere accident. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003). When all factors are absent, a punitive damages award is suspect. *Id.*

Here, at least four factors weigh against Defendants. The jury did not credit Gevas's evidence that he suffered a physical injury, hence the lack of compensatory damages. Still, weighing the evidence favorable to both parties, the jury had ample evidence to conclude that Pork and Brown acted in a way that indicated a reckless disregard for the health of Gevas. Defendants denied Gevas access to a wheelchair for six weeks without justification, and despite Gevas's valid medical permit. [732 Trial Tr. 5/23/23] at 322, 377. This restriction caused Gevas pain and discomfort whenever he had to go somewhere outside of his cell without a wheelchair. *Id.* 345-50. The jury heard testimony that Pork aggressively confronted Gevas about why he needed a wheelchair. *id.* at 320. Pork then went so far as to tell Gevas that "[i]n X House, we don't give out wheelchairs. They give out wheelchair permits like water in the health care unit," and that "X-House officers do not get paid enough to push wheelchairs." *Id.* Both Defendants also knew that Gevas had a medical permit for a double mattress, *id.* at 228-231, 282-86, and yet refused to replace his moldy, dingy mattress for more than 500 days, again without any meaningful justification. *Id.* 316-19, 370. The jury was free to assess Brown and Pork's restrictive approach to Gevas's medical needs and consider the evidence of Pork's remarks to find Defendants had a reckless disregard for Gevas' health.

4

Next, Gevas was not financially vulnerable per se, but he was personally vulnerable as a prisoner in Defendants' official physical custody and control. *Lee v. Edwards*, 101 F.3d 805, 811 (2nd Cir. 1996) (finding a police officer's misconduct "had the power to set into motion the coercive apparatus of the state" and used "real and threatened force that could have aroused the jury."); *Sommerfield v. City of Chicago*, 2018 U.S. Dist. LEXIS 55136, at *20 (N.D. Ill. 2018).

Pork and Brown also denied Gevas a wheelchair for a period of two months and denied him a new mattress over a period of seventeen months. These were not isolated incidents.

Finally, the jury heard evidence through cross-examination that Pork and Brown took steps to minimize their misconduct. At trial, both Defendants admitted on cross-examination that they were aware of Gevas' permit. [732] at 229, 283-85; [733] at 494, 510. Brown testified that he called the healthcare unit about the permit. [732] at 283-85. Pork acknowledged that he stored inmates' medical permits in his personal binder, *id.* at 227, and that he typically received notice of grievances about his conduct. *Id.* at 232. To the contrary, both Defendants submitted declarations in support of summary judgment that they had no knowledge of Gevas's medical permit for a wheelchair. [574].[1] They were impeached with these declarations.

---

[1] The declarations were summarized in the court's summary judgment opinion. [614]. In all, Pork and Brown both stated that: (a) They did not recall whether they were aware of Gevas' wheelchair permit for the period from June 29, 2017, to August 21, 2017, or whether Gevas had used a wheelchair during that time; (b) They would always abide by an inmate's medical permits and would call the healthcare unit if they had questions or concerns about a permit; (c) They never personally interfered with, delayed, or denied medical care to Gevas, and they never denied him access to a wheelchair; and (d) They did not know whether Gevas had filed grievances against them and were not involved in the grievance process at Stateville. *Id.* at 9-10.

5

In their motion, Defendants argue that the Court did not admit the declarations into evidence, only allowing Plaintiff's counsel to use the statements for impeachment. [736] at 13-15. Still, the jury, in accessing the evidence, was permitted to consider the statements as evidence of Defendants' previous attempts to avoid responsibility for their conduct. *See Martinez v. City of New York*, 16-CV-79, 2023 WL 4627739, at *17 (E.D.N.Y. July 19, 2023) (citing *Jennings v. Yurkiw*, 18 F.4th at 393 (2nd Cir. 2021) (allowing jury to consider evidence that "did not itself form the basis of liability" when deciding whether to award punitive damages in a deliberate indifference case). There was ample evidence for the jury to determine that Gevas went without a wheelchair and clean mattresses for months because of deliberate and reckless disregard by Pork and Brown.

Four out of the five *State Farm* factors weigh in Gevas's favor. There is sufficient evidence to support a finding of reprehensibility.

### C. Ratio

Defendants next argue that the disparity between the punitive damages and the lack of compensatory damages is "staggering." Following *Gore,* Courts usually look to the ratio of the various awards, i.e. the size of the award relative to the size of compensatory damages awarded by the jury for the same conduct. That calculation produces a peculiar outcome when, as here, the jury does not award compensatory damages – here the "ratio" of the award as compared to the $2 nominal damages is 30,000 to 1.

It follows that "nothing prevents an award of punitive damages for constitutional violations when compensatory damages are not available." *Calhoun v. DeTella*, 319 F.3d 936, 942 (7th Cir. 2003); *accord Sommerfield v. Knasiak*, 967 F.3d 617, 624 (7th Cir. 2020); *Edwards v. Jewish Hospital of St. Louis*, 855 F.2d 1345, 1352 (8th Cir.1988) ("To apply the proportionality rule to the nominal damages award would invalidate most punitive damage awards because only very low punitive damage awards could be said to bear reasonable relationship to the amount of a nominal damages award."). In *Matthias v. Accor Economy Lodging, Inc.*, 347 F.3d 672, 676 (7th Cir. 2003), the Seventh Circuit explained that punitive damages serve an important deterrence function in cases that prosecute dignitary harm. Compensatory damages "do not do the trick" in such cases because compensable harm can be minimal or hard to quantify. *Id.* Punitive damages thus fill in to prevent offenders from "eluding liability" and deter future misconduct. *Gavin v. AT & T Corp.*, 464 F.3d 634, 641 (7th Cir. 2006).

So, though the jury did not find that Gevas suffered any compensable injury, they still found that Defendants acted in reckless disregard of Plaintiff's constitutional rights. Gevas faced great potential harm due to Defendants' deliberate indifference, subjected to immobility and unsafe sleeping conditions. The disparity between the nominal damages and punitive damages is not cause to remit the award.

### D. Comparable Cases

The third *Gore* guidepost instructs courts to compare the punitive damages award to jury awards authorized in similar cases. The Court will do so, with two

7

caveats that other courts considering remittitur have noted. First, the "relative dearth of punitive damages awards for claims of deliberate indifference to serious medical needs" across the federal courts, *Martinez*, 2023 WL 4627739, at *20 (quoting *Williams v. Marinelli*, 13-CV-1154, 2017 WL 11473740, at *25 (D. Conn. Feb. 8, 2017), prompts the Court to broaden its search to comparable police misconduct cases. Second, older award sizes ought to be adjusted for inflation. *See Synnott v. Burgermeister*, 22-1104, 2024 WL 108784, at *2 (7th Cir. Jan. 10, 2024); *Jennings*, 18 F.4th at 393 n.7.

With that in mind, the jury award here is not out of bounds with comparable cases. While Defendants and Gevas cite cases on either side of the award at issue here, the Court looks primarily to cases with similar facts. The most comparable case in this Circuit is *Townsend v. Allen*, 09-CV-204-BBC, 2009 WL 347010 (W.D. Wis. Feb. 10, 2009), in which an incarcerated plaintiff was forced to sleep on an unsanitary mattress for two months and prevailed on his deliberate indifference claim. The jury awarded him $295,000 in punitive damages, which the trial court remitted to $29,500. *Id.* Looking outside the Circuit, *Beckford v. Irvin* provides another helpful comparison. 49 F. Supp. 2d 170 (W.D.N.Y. 1999). There, an incarcerated plaintiff brought a successful deliberate indifference suit against prison officials for denying him a wheelchair for a month and ignoring his bedsores. *Id.* at 173-76. The jury awarded no compensatory damages and $35,000 in punitive damages against two correctional officer defendants. *Id.*

The awards in *Townsend* and *Beckford* are each worth more than $42,000 today. Altogether, the two cases indicate that the jury's punitive damages award against Pork and Brown is within the range established by comparable cases. Here, Gevas suffered for a longer period than the *Townsend* and *Beckford* plaintiffs: Defendants denied him wheelchair access for two months and refused to replace his filthy mattress for 17 months. Where "the judicial function is to police a range, not a point," *Matthias*, 347 F.3d at 676, the Court finds a larger award reasonable to account for more protracted misconduct. The jury's punitive damages award of $60,000 falls within the constitutionally permissible range.

The Court also notes that this was no "runaway jury." The Court gave a punitive damages instruction to the jury that accurately restated the law and aligned with the standard approved by the Seventh Circuit. *Compare* [734, Trial Tr. 5/25/234] at 15-16 *with Alexander v. City of Milwaukee*, 474 F.3d 437, 453 (7th Cir. 2007) (quoting *Smith v. Wade*, 461 U.S. 30, 56, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983)) ("A jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."). The Court further instructed that punitive damages may only be awarded to punish the Defendants' conduct, not to vindicate jurors' bias or prejudice. [734] at 16.

We presume the jury followed these instructions. *CSX Transp., Inc. v. Hensley*, 556 U.S. 838, 841 (2009). Tellingly, the jury verdict exhibits a close attention to the evidence. The jury found Gomez not liable where the evidence pointed to him acting

9

as a messenger for Pork and Brown. The jury did not award Gevas compensatory damages for injuries that it determined he did not establish. And finally, the jury awarded different amounts against Pork and Brown to account for variances in their respective liability. The jury determined that Pork, who directly confronted Gevas about his need for a wheelchair and stored medical permits in his own office, should pay more in damages than Brown. The punitive damages award was grounded in sufficient evidence, not unchecked bias or prejudice. Remittitur of the punitive damages amount is not warranted.

### III. Defendants' Motion for a New Trial

#### A. Standard

A motion for a new trial under Rule 59 may be granted only "when the district court—in its own assessment of the evidence presented—believes that the verdict went against [its] manifest weight." *Abellan v. Lavelo Prop. Mgmt., LLC*, 948 F.3d 820, 831 (7th Cir. 2020) (alteration in original) (quoting *Mejia v. Cook County*, 650 F.3d 631, 634 (7th Cir. 2011)). Rule 59(a) grants the trial court the "special power" to get a "general sense of the weight of the evidence, assessing the credibility of the witnesses and the comparative strength of the facts." *Id.* (quotation omitted). In moving for a new trial, a party seeking to overturn a court's evidentiary ruling "bears a heavy burden" because a trial court's balancing of probative value and unfair prejudice is highly discretionary. *Henderson v. Wilkie*, 966 F.3d 530, 534–35 (7th Cir. 2020) (quoting *Speedy v. Rexnord Corp.*, 243 F.3d 397, 404 (7th Cir. 2001)). Evidentiary errors warrant a new trial only "if the evidentiary errors had 'a

10

substantial and injurious effect or influence on the determination of a jury and the result is inconsistent with substantial justice.'" *Burton v. E.I. du Pont de Nemours & Co., Inc.*, 994 F.3d 791, 812 (7th Cir. 2021) (quoting *Fields v. City of Chicago*, 981 F.3d 534, 544 (7th Cir. 2020)).

### i. Plaintiff's Closing Argument

Defendants argue that Plaintiff's counsel improperly suggested to the jury during closing argument that they should consider inaccuracies in the declarations signed by Pork and Brown, as well as witnesses' inconsistent trial testimony, in deciding whether to award punitive damages. Defendants argue that these statements influenced the jury to award damages based on a "defense strategy," instead of Defendants' conduct, and shifted the burden of proof to Defendants. For the reasons described below, this argument lacks merit.

To obtain a new trial based on attorney misconduct, Defendants must show both that the "misconduct occurred and that it prejudiced their case." *Viramontes v. City of Chicago*, 840 F.3d 423, 431 (7th Cir. 2016). The Seventh Circuit "has been loathe to find that improper comments made during closing argument rise to the level of reversible error." *Smith v. Hunt*, 707 F.3d 803, 812 (7th Cir. 2013).

Defendants identify three categories of comments made by Plaintiff's counsel in closing that they believe warrant a new trial: Pork and Brown's testimony was inconsistent with the signed declarations and other evidence from the record; the jury would be able to review the declarations even though they were not submitted into evidence; and Defendants decided to call Nurse Gallagher when "they knew [her

11

testimony] couldn't be true." [736] at 10-15. All three points went towards counsel's argument for punitive damages.

The first two statements are non-issues. As discussed above, the jury could properly consider whether Defendants' trial testimony was inconsistent with their previous statements when deciding whether to award punitive damages. *See Jennings*, 18 F.4th at 393. As for counsel's comments implying that the jury would be able to read the declarations, though they were not admitted into evidence, the Court promptly warned the parties of the potential to mislead the jury. [734] at 44-47. Thereafter, in rebuttal argument, Plaintiff's counsel clarified to the jury that "you won't see the particular affidavits because of the way the [R]ules [of Evidence] work." *Id.* at 71. This clarification on rebuttal cured the risk of prejudice to the Defendants. It remained proper, then, for the jury to weigh Pork and Brown's previous inconsistent statements to determine their overall credibility.

Plaintiff counsel's comments about Nurse Gallagher were aggressive advocacy. Gallagher, a registered nurse who worked in the sick call at Stateville in July 2017, testified that she saw Mr. Gevas walking through X House on July 3rd of 2017. [733, Trial Tr. 5/24/23] at 140. Gevas then took the stand in rebuttal and testified that the geography of X House would make it physically impossible for Gallagher to see Gevas's cell from the sick room she testified she was working in. *Id.* at 210.

Plaintiff's counsel later stated in closing that Defendants "were the ones who in their own defense were willing to put up Ms. Gallagher, even though . . . they knew it couldn't be true," and "the way to stop that is punitive damages." [734] at 74.

12

Defendants lodged a subsequent objection. *Id.* at 76. It's true that the jury should not award punitive damages to not punish Defendants for another witness's lack of credibility. However, any prejudice from the improper statement does not warrant a new trial. Plaintiffs' counsel's comments regarding Defendants' decision to call Gallagher were brief, and not a substantial portion of the closing argument. In addition, the Court instructed the jury on the proper burden of proof and that attorneys' statements during closing are argument, not evidence. [734] at 11, 12, 7. "There is a longstanding presumption that 'curative instructions to the jury mitigate harm that may otherwise result from improper comments' during closing argument." *Viramontes*, 840 F.3d at 431 (quoting *Smith v. Hunt*, 707 F.3d 803, 812 (7th Cir. 2013)). The comments do not warrant a new trial.

### ii. Evidentiary Objections

Defendants next argue that the Court erred in admitting certain pieces of evidence at trial. The Court declines to award a new trial on this basis.

First, Defendants believe the Court erred in admitting a video of a shakedown of Gevas's cell on May 2, 2018. This Court found the video relevant evidence of Defendants' motive and knowledge. [712]. The Court reaffirms its decision.

To prove Defendants were deliberately indifferent, Gevas was required to show "something approaching total unconcern for [his] welfare in the face of serious risks." *Stockton v. Milwaukee Cnty.*, 44 F.4th 605, 615 (7th Cir. 2022) (quoting *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020). Indifference "is manifested by . . . prison guards in intentionally denying or delaying access to medical

13

care or intentionally interfering with the treatment once prescribed." *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016), as amended (Aug. 25, 2016). While the video did not show Gevas's wheelchair (or lack thereof) or a dirty mattress, it is undisputed that Pork and Brown are displayed in the footage. Therein, Pork and Brown throw items around the cell and into the hallway, including Gevas's CPAP machine and extra pillows he received through a medical permit. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. Here, the video was relevant evidence of how Defendants treated Gevas's property generally, and his medical supplies in particular. It was proper for the Court to admit the video.

Defendants also argue that the Court erred in allowing evidence of Plaintiff's alleged mental or emotional injuries where the Prison Litigation Reform Act requires a showing of physical injury.[2] The Court denied that motion in limine because Gevas represented that he would proffer evidence of physical injury at trial. Gevas did present such evidence, testifying at trial that he experienced dangerous falls without a wheelchair and that he experienced pain and allergies from sleeping on a moldy mattress. (Tr. 340-46; 316-18). The jury evidently did not credit his testimony, declining to award compensatory damages. Still, the PLRA does not foreclose an award of nominal or punitive damages for an Eighth Amendment violation involving

---

[2] To satisfy the PLRA, incarcerated plaintiffs "must make a "prior showing" of physical injury or the commission of a sexual act before recovering for these injuries." *Hacker v. Dart*, 62 F.4th 1073, 1079 (7th Cir. 2023) (quoting § 1997e(e)). The injury must be "more than negligible although not necessarily significant." *Id.*

14

no physical injury. *Calhoun v. DeTella*, 319 F.3d 936, 941 (7th Cir. 2003). "This conclusion readily follows from the fact that nominal damages "are not compensation for loss or injury, but rather recognition of a violation of rights . . . [f]or similar reasons we believe that § 1997e(e) does not preclude claims for punitive damages for violations of the Eighth Amendment." *Id.* (quoting Redding v. Fairman, 717 F.2d 1105, 1119 (7th Cir.1983)). Thus, the Court's admission of Gevas's mental and emotional injuries stemming from the Eighth Amendment violation was proper and is not now a basis for a new trial.

## IV. Motion for Setoff

Defendants request in the alternative for a setoff of the punitive damages award "the amount of any settlement Plaintiff may have entered into with any other defendant." This argument is unavailing. "Punitive damages are not common damages." *Phoenix Bond & Indem. Co. v. Bridge*, 05-CV-4095, 2012 WL 8706, at *2 (N.D. Ill. Jan. 2, 2012) (quoting *Singer v. Olympia Brewing Co.*, 878 F.2d 596, 600 (2d Cir.1989)). While they are not "intended to remedy under compensation," punitive damages "are deliberately excess compensation," *BCS Services, Inc. v. BG Investments, Inc.*, 728 F.3d 633, 641 (7th Cir. 2013). The jury here carefully considered the evidence and crafted an individualized award as to each Defendant. A setoff would disrupt their intention, through punitive damages, to deter unconstitutional conduct "on a defendant-by-defendant basis." *Phoenix Bond*, 2012 WL 8706, at *2. The Court thus declines to setoff the punitive damages award by any amount.

## V. Motion for Sanctions

Gevas requests sanctions against Pork and Brown for false statements contained in the declarations. The Court declines to issue sanctions but cautions litigants that misrepresentations under oath can have consequences—it likely did here. The request for sanctions is denied.

## VI. Conclusion

For the stated reasons, the Court denies Defendants Pork and Brown's motions for remittitur and a new trial.

E N T E R:

Dated: February 22, 2024

*Mary M Rowland*

MARY M. ROWLAND
United States District Judge